UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE: KEVIN TINNEY, Debtor : B.K. CASE NO. 04-13806, Chapter 7

STACY B. FERRARA, TRUSTEE
Plaintiff

v. A.P. NO. 08-1009

RICHARD P. D'ADDARIO
Defendant

**MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE**

NOW comes Richard D'Addario ("Defendant"), and hereby files the within Memorandum In Support of Motion to Withdraw the Reference requesting that this Honorable United States District Court for the District of Rhode Island (the "District Court") find that "cause" has been shown to exercise its authority to withdraw the reference to the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") in accordance with 28 U.S.C. §157(d) to have the case adjudicated in the District Court in the first instance.

## I. PERTINENT FACTUAL BACKGROUND

On or about February 20, 2008, Stacy Ferrara, as the Trustee for Chapter 7 Debtor Kevin Tinney ("Debtor"), filed the instant Complaint alleging, inter alia, that the Defendant Richard D'Addario ("Defendant") committed legal malpractice in his pre-petition representation of Debtor (at times "Adversary Proceeding"). A copy of the Complaint is attached hereto as Exhibit A. In the Complaint, the Trustee alleges the following: that, in 1999, Debtor filed a petition in the Probate Court for the City of Newport ("Probate Court") claiming entitlement to property formerly owned by his adopted (and now deceased) mother, Ruth Tinney ("Property");

that Debtor retained Defendant to represent him in the Probate Court relating to his claimed entitlement to the Property; that on or about October 23, 2003, the Probate Court entered an Order which had the effect of, inter alia, rejecting any entitlement Debtor had in and to the Property; that on or about October 16, 2003, Defendant filed a Claim of Appeal in the Probate Court seeking de novo review of the Probate Court's decision in the Newport County Superior Court ("Superior Court"); that on or about November 3, 2003, the Defendant filed in the Superior Court a Statement of the Reasons for the Appeal along with a certified copy of the Claim of Appeal and Record of proceedings from the Probate Court; that, in connection with the appeal, the Defendant failed to file with the Superior Court a transcript of the Probate Court hearings ("Transcript") within the appropriate time required by R.I.G.L. 33-23-1 (i.e., within thirty (30) days after the entry of the order (or) November 15, 2003); that on December 3, 2004, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Rhode Island; and that on December 29, 2004, the Trustee was appointed chapter 11 trustee of the bankruptcy estate;[1] that on or about April 4, 2005, the Superior Court entered judgment dismissing the Superior Court appeal because of the failure to file the Transcript; and that, upon appeal to the Rhode Island Supreme Court ("Supreme Court"), the Supreme Court affirmed the decision of the Superior Court.

## II. ARGUMENT

### I. This Court Should Find "Cause" Has Been Shown To Exercise Its Discretion To Withdraw the Reference Made To The Bankruptcy Court

[1] Upon motion of the chapter 11 Trustee, the case was converted to a chapter 7 case on February 8, 2005 and the chapter 11 Trustee was appointed as the chapter 7 Trustee.

Pursuant to 28 U.S.C. § 1334(b), jurisdiction over bankruptcy proceedings vests in the first instance with the district court. See In re Almac's, Inc., 202 B.R. 648, 653 (D.R.I. 1996). Under 28 U.S.C. § 157(a), bankruptcy proceedings may be automatically referred to the bankruptcy court. Id. at 653-54. *citing*, Order Referring Bankruptcy Proceedings, dated July 18, 1984. However, a district court has the discretion to withdraw a proceeding from the bankruptcy court pursuant to 28 U.S.C. § 157(d). Section 157(d) provides, in pertinent part, as follows:

> "The District Court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

A. In deciding that "cause" has been shown to exercise its discretion to withdraw the reference, this District Court should consider the factors articulated by the United States Circuit Court of Appeals for the Fifth Circuit in *Holland.*

Section 157(d) does not define "cause." Therefore, when deciding to withdraw the reference, a district court should consider, inter alia, the following: (1) whether the underlying law suit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy administration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtor's and creditors' resources; and (5) whether the withdrawal of the reference will expedite the bankruptcy process. Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985).

In In re Almac's, this United States District Court adopted the analysis articulated in Holland and stated that "the requisite cause may be found '[i]f one or more of these factors is present.'" 202 B.R. at 657, *quoting*, United States v. Kaplan, 146 B.R. 500, 504 (Bankr. D.Mass. 1992). In this Adversary Proceeding, not one but all of the above-mentioned factors weigh in favor of withdrawing the reference. Thus, after applying the Holland factors to the facts of this Adversary Proceeding, this District Court should find that "cause" has been shown for the Court to exercise its discretion to withdraw the reference.

(a) In deciding that "cause" has been shown to withdraw the reference, this Court should find that the state-law legal malpractice claim asserted by the Trustee against the Defendant is a non-core proceeding, a factor which strongly weighs in favor of withdrawing the reference because same will promote judicial economy.

In determining whether "cause" has been shown to withdraw the reference, a district court should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. In re Orion Pictures, Corp., 4 F.3d 1095, 1101 (2nd Cir. 1993); *see also,* In re British American Properties III, Ltd., 369 B.R. 322, (Bankr. S.D.Tex. 2007)(stating that finding a matter to be non-core weighs in favor of withdrawing the reference). In the Complaint, the Trustee asserts that the legal malpractice claim made against Defendant who provided pre-petition legal services to the Debtor is a core proceeding under 28 U.S.C. § 157(b)(2)(A). However, the case law interpreting § 157(b) does not support such an assertion.[2]

In Ralls v. Docktor Pet Centers, Inc., 177 B.R. 420, 424-25 (D. Mass. 1995), the United States District Court for the District of Massachusetts provided the following definition of a non-core proceeding:

> "Non-core proceedings are state or federal claims that arise between parties within a bankruptcy proceeding. They are claims that do not stem from the Code itself, but 'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an

[2] In In re Orion Pictures Corp., 4 F.3d 1095, 1102 (2nd Cir. 1993), the United States Circuit Court of Appeals for the Second Circuit rejected the argument that a pre-petition contract claim is a core proceeding under the language of § 157(b)(2)(A) of the Bankruptcy Code indicating that such claims are not "matters concerning the administration of the estate" simply because the potential recovery on such a claim could affect the administration of the estate (i.e., collection of claim would inure to the benefit of the estate or the creditors of the estate). The Court added that the problem with such an analysis is that it creates an exception to the United States Supreme Court holding in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982) that would swallow the rule. Id. Any contract action that a debtor could pursue against a defendant presumably could be expected to inure to the benefit of the debtor estate and thus "concern[s]" its "administration." Id. The Court also noted that although Congress intended § 157(b)(2)(A) to encompass a wide range of matters as core, there is no evidence of any Congressional intent to contravene the Supreme Court's holding in *Marathon*. Id.; *see also,* In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir. 1987)(noting the distinction between post-petition debts that are considered core proceedings under § 157(b)(2)(A) and pre-petition debts which do not arise out of the "administration of the estate" under § 157(b)(2)(A)).

> impact upon the handling and administration of the bankrupt estate.' *quoting* In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Circ. 1991). 'If an action would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter.'" *quoting*, In re MEC Steel Bldgs., 136 B.R. 606, 609 (Bankr.D.Puerto Rico 1992A)((citing 1 Lawrence P. King et. al., Collier on Bankruptcy P 3.01(1)(c)(iv) at 3-27 (15th ed 1991)).

Thus, according to the analysis discussed in Ralls, even though the pre-petition legal malpractice claim brought against the Defendant may have some effect on the bankruptcy estate, the Adversary Proceeding is clearly "non-core" because it is an action that would survive outside of bankruptcy, and in the absence of the bankruptcy case, would have been initiated in the state courts of Rhode Island.

In Ralls, the Court analyzed the case of In re Arnold Print Works, Inc. as the First Circuit's leading authority on the definition of a core proceeding and noted that Arnold reaffirmed that bankruptcy courts are without power to adjudicate a suit seeking recovery on pre-petition debts, i.e., bankruptcy courts cannot issue final orders and judgments in non-core proceedings. Id. at 425, *citing* In re Arnold Print Works, Inc. 815 F.2d at 165. In this Adversary Proceeding, the Trustee alleges that Debtor's cause of action accrued at the time Defendant failed to file with the Newport County Superior Court a transcript of the Probate Court hearings within the time required by R.I.G.L. 33-23-1. That time period expired on November 15, 2003. However, the Debtor did not file his voluntary petition for relief under chapter 11 until December 3, 2004. Thus, the Debtor's claim against the Defendant arose over one year before the bankruptcy filing. As such, it is abundantly clear that this Adversary Proceeding, i.e., the legal malpractice claim asserted against Defendant regarding his pre-petition legal services rendered to Debtor, is a non-core proceeding.

More specifically, courts have consistently held that legal malpractice claims made against attorneys regarding pre-petition services provided to clients who later become debtors in bankruptcy proceedings are non-core claims. In re VWE Group, Inc., 359 B.R. 441, 448 (S.D.N.Y. 2007). In In re VWE Group, Inc., the United States District Court for the Southern District of New York held that a state-law professional malpractice claim against individual attorneys employed by the debtor's pre-petition counsel was a non-core proceeding.[3] Id. (adding that courts have consistently found professional malpractice claims arising out of pre-petition misconduct to be non-core); *see e.g.*, Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP, 201 B.R. 635, 639-40 (S.D.N.Y. 1996)(malpractice claim against debtor's law firm arising out of pre-petition legal work was non-core); *same* United Orient Bank v. Green (In re Green), 200 B.R. 296, 298-99 (S.D.N.Y. 1996).

In non-core proceedings, only a district court can issue final orders or judgments.[4] 28 U.S.C. § 157(c) provides that:

> A bankruptcy judge may hear a case that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge[5] after considering the bankruptcy judge's proposed findings and conclusions and after review *de novo* those matters to which any party has timely and specifically objected. (Emphasis added)

As the United States Circuit Court of Appeals for the Second Circuit aptly pointed out, because a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court, unnecessary costs will be avoided by a single proceeding in

[3] In In re The VWE Group, Inc., the Court rejected plaintiff's assertion that only a bankruptcy court can determine whether a law firm's failure to advise a corporation to declare bankruptcy at a particular point in time is or is not malpractice. Id. at 449.

[4] A bankruptcy court can only issue final orders and judgments in a non-core proceeding with the consent of all parties. 28 U.S.C. § 157(c)(2). However, in his Answer, the Defendant has specifically not given consent for same. See ¶ 6 of the Answer. A copy of the Answer is attached hereto as Exhibit B.

the district court. In re Orion, 4 F.3d at 1101; *see also*, In re Lawrence Group, Inc., 285 B.R. 784, 789 (N.D.N.Y. 2002)(noting that withdrawing the reference promotes judicial economy because it reduces the *de novo* two-step process mandated by § 157(c), to a one-step process if resolved in the district court in the first instance).

This United States District Court has already stated that it is "well-recognized that preventing such a waste of judicial resources may trigger use of § 157(d)." In re Almac's, 202 B.R. at 659. In In re Almac's, the Court held that the reference should be withdrawn with respect to the non-core actions to avoid the waste of judicial resources that would result if the court were forced to conduct *de novo* review of the bankruptcy court's findings. Id. Similarly, the reference made to the Bankruptcy Court in this "non-core" Adversary Proceeding should be withdrawn because it will avoid wasting judicial resources associated with the two-step *de novo* review process.[6]

(b) This Court should find that withdrawing the reference will not impede the goal of achieving uniformity in bankruptcy administration because the Bankruptcy Court has not invested a large amount of time and resources in this Adversary Proceeding.

Whether allowing a bankruptcy court to adjudicate an adversary proceeding will have the effect of promoting uniformity in the bankruptcy administration depends on whether the court is already familiar with the facts of the underlying action. In re British American Properties III, Ltd., 369 B.R. at 327. In In re British American Properties III, Ltd., the United States Bankruptcy Court for the Southern District of Texas indicated that the fact that it had not invested large amounts of time and resources and had not made

[6] It has been noted that, by allowing bankruptcy courts to hear Title 11 actions, Congress has created a system that promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them. In re Healthcentral.com, 504 F.3d 775, 787-88 (9th Cir. 2007). However, the issues presented in this Adversary Proceeding do nothing to promote judicial economy and efficiency

any other rulings in the underlying action weighed in favor of withdrawal of the reference. Id. (noting that the only hearing conducted related to the motion to withdraw the reference); *see also*, In re Lawrence Group, 285 B.R. at 789 (stating that because the dispute among the parties is non-core, it should have little impact on the uniformity of bankruptcy administration).

In this Adversary Proceeding, the Bankruptcy Court has also not invested a large amount of time and resources and has not made any rulings regarding same. The Bankruptcy Court has not heard any motions or invested large amounts of time regarding this Adversary Proceeding. At this point, the Trustee has filed the Complaint and the Defendant has recently answered same. Thus, withdrawing the reference to the Bankruptcy Court will not impede the goal of promoting uniformity in the bankruptcy administration.

(c) This Court should withdraw the reference made to the Bankruptcy Court as withdrawal will not impede the goal of reducing forum shopping.

In In re Lawrence Group, the Court took into consideration whether forum shopping would be reduced if it declined to withdraw the reference. 285 B.R. at 789. However, the Court in Lawrence turned its focus on the fact that, at the time the defendant entered into the contract, it had no reason to believe that any disputes arising out of the contract would be litigated in a bankruptcy court. Id. Thus, the Court noted that the defendant should not be obligated to litigate in a forum that was not reasonably foreseeable or expected at the time the contract was formed. Id. Similar to the defendant in In re Lawrence Group, the Defendant in this Adversary Proceeding entered into the attorney-client contractual relationship with the Debtor well before the bankruptcy case

because it is a state-law malpractice claim which would not take advantage of the bankruptcy court's unique

was filed. Thus, the Defendant should not be obligated to litigate in the bankruptcy court, a forum that was not expected at the time the Debtor retained him. Moreover, the Defendant has no other involvement in the bankruptcy case (i.e., Defendant is not a creditor of the bankruptcy estate). As such, withdrawing the reference in this Adversary Proceeding will not impede the goal of reducing forum shopping.

(d) This Court should withdraw the reference because withdrawal will be an economical use of the Debtor's and the Defendant's resources.

In In re British American Properties III, Ltd., the Court indicated that the economical use of the resources of a non-debtor/non-creditor third party should be taken into account when evaluating whether to withdraw the reference. 369 B.R. at 328. Ultimately, the Court decided that the neither party would incur increased expenses or lose any resources by the district court adjudicating the suit because the parties had not spent any significant time briefing the bankruptcy court on the underlying merits of the dispute. Id. Similarly, because the Trustee and the Defendant in this Adversary Proceeding have not spent any time briefing the Bankruptcy Court on the underlying merits of the Adversary Proceeding, neither party will incur increased expenses or lose any resources by this District Court adjudicating same. In fact, the greatest economical use of the Debtor's and the Defendant's resources would be for this District Court to withdraw the reference because it will negate the additional litigation expenses associated with the two-step *de novo* review process mandated by § 157(c).[7]

(e) This Court should withdraw the reference because withdrawal will expedite the bankruptcy process.

---

knowledge of Title 11.

A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if withdrawal would unduly delay the administration of same. Id., *citing*, In re Pruitt, 910 F.2d 1160, 1168 (3rd Cir. 1990). However, as the Court in In re Lawrence Group indicated, refusing to withdraw the reference may actually unduly delay the administration of the bankruptcy case.[8] 285 B.R. at 789 (noting that if the bankruptcy court hears the non-core issue in the first instance, this will trigger the two-step process outlined in § 157(c) which will delay the resolution of the contractual dispute and, consequently, the final administration of the bankruptcy estate); *see also*, In re British American Properties III, Ltd., 369 B.R. at 328 (noting that delay in the adjudication of an adversary proceeding will increase the time it takes creditors to receive payment as the trustee generally does not make disbursements to creditors until all assets have been collected and liquidated). Thus, withdrawing the reference made to the Bankruptcy Court regarding this Adversary Proceeding will foster the goal of expediting the bankruptcy process.

## III. CONCLUSION

Based upon the reasons and authorities previously set forth, Defendant respectfully requests that this Honorable United States District Court withdraw the reference made to the Bankruptcy Court for "cause" shown so that this Adversary Proceeding may be heard in the District Court in the first instance.

---

[7] The elimination of litigation expenses associated with the protracted two-step process will undoubtedly inure to the benefit of the creditors of the Debtor's bankruptcy estate because cutting litigation expenses will translate into more monies to be distributed to creditors.

[8] *See generally,* In re British American Properties III, Ltd., 369 B.R. at 328 (noting that delay in the adjudication of an adversary proceeding will increase the time it takes creditors to receive payment as the trustee in a bankruptcy case generally does not make disbursements to creditors until all assets have been collected and liquidated).

Richard P. D'Addario

By his Attorneys,

/s/ Robert D. Wieck
Robert D. Wieck, Esq. #1739
Carl J. Ricci, Esq. #6147
MacADAMS WIECK DeLUCA & GEMMA, INC.
101 Dyer Street, Suite 400
Providence, RI 02903
(401) 454-8700
(401) 454-8755 (Fax)
Date: May 6, 2008

**CERTIFICATION OF SERVICE**

I hereby certify that a true copy of the within Memorandum in Support of Motion to Withdraw the Reference was served by electronic mail through the Bankruptcy Court's Electronic Case Filing system on the 6th day of May 2008, to the following:

Andrew Richardson, Esq.
Boyajian Harrington & Richardson
andy@bhrlaw.com

/s/ Robert D. Wieck

G:\D'Addario, Richard\Bankruptcy\Pleadings\Withdraw Reference Memo 050608.doc