UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In re:

KEVIN TINNEY
Debtor

BK. 04-13806
CHAPTER 7

---

CA 08 212S

STACY B. FERRARA, TRUSTEE OF KEVIN TINNEY
Plaintiff

VS.

A.P. 08-1009

RICHARD P. D'ADDARIO
Defendant

OBJECTTION TO DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

Stacy B. Ferrara, Plaintiff/Trutsee, objects to the Defendant's motion to withdraw the reference of the adversary proceeding to the United States Bankruptcy Court for the District of Rhode Island. The reasons for the Plaintiff's objection are set forth in the accompanying memorandum of law.

STACY B. FERRERA, Trustee/Plaintiff

By her attorneys,

/s/ Steven J. Boyajian

Andrew S. Richardson (#2608)
Steven J. Boyajian (#7263)
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, RI 02906
Tel. (401) 273-9600
Fax. (401) 273-9605
steve@bhrlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2008, I electronically filed the above motion and accompanying memorandum of law with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

- Stacy B. Ferrara
- Robert D. Wieck
- Andrew S. Richardson
- Joseph F. Penza

/s/ Steven J. Boyajian

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

In re:

KEVIN TINNEY
Debtor

BK. 04-13806
CHAPTER 7

---

STACY B. FERRARA, TRUSTEE OF KEVIN TINNEY
Plaintiff

VS.

A.P. 08-1009

RICHARD P. D'ADDARIO
Defendant

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
OBJECTION TO DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

## I. Facts

This adversary proceeding was commenced by Stacy Ferrara ("Plaintiff") on February 20, 2008 in her capacity as Trustee of the bankruptcy estate of Kevin Tinney ("Debtor"). The Complaint seeks to recover damages suffered by the bankruptcy estate on account of the legal malpractice of Richard P. D'Addario ("Defendant"). The Defendant represented the Debtor with respect to the administration of the estate of Debtor's adoptive mother Ruth Tinney ("Ruth"). As Ruth's adopted son, the Debtor contended, through a petition for administration of Ruth's estate, that he was entitled to inherit one half of Ruth's personal property through intestacy. The Debtor's claim was rejected by the Probate Court of the City of Newport by an order dated October 16,

2003.[1] The Debtor, by and through the Defendant appealed the order of the Probate Court to the Newport County Superior Court, but the Defendant failed to properly perfect the Debtor's appeal.

On December 3, 2004, following the appeal of the Probate Court decision to the Superior Court, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Petition Date"). Consequently, the Debtor's rights with respect to Ruth's estate became property of his bankruptcy estate. See 11 U.S.C. § 541. The Plaintiff was appointed trustee of the bankruptcy estate on December 29, 2004. On April 4, 2005 the Superior Court entered an order which had the effect of dismissing the pending appeal of the Probate Court decision based upon the Defendant's failure to properly perfect the appeal in accordance with section 33-23-1 of the Rhode Island General Laws ("Superior Court Order"). At the time of the Superior Court Order the probate appeal was property of the bankruptcy estate subject to administration by the Plaintiff/Trustee. In her capacity as Trustee, it was the Plaintiff who unsuccessfully opposed the dismissal of the probate appeal.

The Plaintiff/Trustee appealed the Superior Court Order to the Rhode Island Supreme Court which affirmed the decision of the Superior Court on November 14, 2006 (In re Tinney, 911 A.2d 272 (R.I. 2006)). The Supreme Court's decision irremediably terminated the claim of the bankruptcy estate to the assets of Ruth's estate.

[1] The basis of the Probate Court decision was that Ruth's personal property was jointly owned with rights of survivorship by Ruth, her natural son Donald Tinney and Donald's wife Harle Tinney. Consequently, the personal property would pass by operation of law to Donald and Harle and not become part of Ruth's estate subject to distribution through intestacy.

## II. Argument

Jurisdiction over bankruptcy cases vests in the federal district courts in the first instance. 28 U.S.C § 1334. The district courts are given authority to refer three types of proceedings to the bankruptcy courts: cases arising under the Bankruptcy Code, proceedings arising within a case under the Bankruptcy Code or a proceedings related to a case under the Bankruptcy Code. See 11 U.S.C. § 157(b). The United States District Court for the District of Rhode Island has, by local rule, referred bankruptcy matters to the Bankruptcy Court. See LR 109. This reference may be withdrawn for "good cause shown." See 28 U.S.C. § 157(d) and LR 109(a).

The Defendant has failed to establish cause for withdrawal of the automatic reference.

The party seeking withdrawal bears the burden of demonstrating cause for the requested relief. Official Committee of Unsecured Creditors v. TSG Equity Fund, L.P. (In re Envisionet Computer Services, Inc.), 276 B.R. 1, 4 (D.Me. 2002). Withdrawal of the reference should be employed sparingly. See Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.), 136 B.R. 59, 61 (S.D.N.Y. 1992). "In determining whether cause exists for withdrawing the reference, the courts should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, conservation of debtors' and creditors' resources, expediting the bankruptcy process and the right to a jury trial." 1 Collier on Bankruptcy ¶ 3.04[1][c] (Alan N. Resnick & Henry J. Sommer eds., 2007)(citing Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir. 1985)).

*This adversary proceeding is a core matter such that the interests of efficiency and uniformity will be best served by the matter being heard in the Bankruptcy Court*

The primary consideration in determining whether cause has been shown such that a district court should withdraw a reference to a bankruptcy court is whether the proceeding is "core" or "non-core." See Zahn v. Yucaipa Capital Fund (In re Almacs, Inc.), 202 B.R. 648, 657 (D.R.I. 1996). The core/non-core distinction is pivotal because considerations of judicial efficiency and uniformity depend upon it. See id. Only in core proceedings is the Bankruptcy Court authorized to issue final orders and judgments. See 28 U.S.C. § 157(b). In non-core matters, often referred to as matters "related to" a bankruptcy, the determinations of a bankruptcy judge are recommendations subject to final approval and de novo review by the district courts.[2] See 28 U.S.C. § 157(c). In developing the concept of core proceedings Congress sought to confer the broadest possible authority upon bankruptcy judges while remaining within the bounds of the Constitution. See U.S. Lines, Inc. v. American S.S. Owners Mut. Protection Ass'n, Inc. (In re U.S. Lines, Inc.), 197 F.3d 631, 637 (2nd Cir. 1999)(stating, "'core proceedings' should be given a broad interpretation that is 'close to or congruent with constitutional limits'"); Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 168 (1st Cir. 1987)(Breyer, J).

The constitutional bounds of the power of the bankruptcy courts were established in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858 (1982). In Marathon the Supreme Court determined that bankruptcy judges, whose authority is derived from Article I of the constitution, lacked the power to fully adjudicate

[2] Efficiency is further served by withdrawal of the reference in non-core matters which will be tried before a jury because bankruptcy courts may not conduct jury trials in such matters. This consideration is irrelevant here because the Defendant has not sought a jury trial. See In re Bank of New England Corp., 360 B.R. 1, 4-5 (D.Mass. 2007).

claims which were "antecedent" to the bankruptcy petition. 458 U.S. at 84; 102 S.Ct. at 2878. The claims considered by the Marathon Court were causes of action which existed prior to the commencement of the bankruptcy case and were founded upon a prepetiton contract and a prepetition breach resulting in prepetition damages. See Marathon Pipeline Co. v. Northern Pipeline Const. Co., 12 B.R. 946, 947 (D.Minn. 1981).

In response to the jurisdictional limitations imposed by Marathon, Congress enacted a series of statutes meant to confer the broadest possible powers upon the bankruptcy courts. In re Arnold Print Works, Inc., 815 F.2d at 166-67, 170-71. Since then Courts have repeatedly held that Marathon should be narrowly interpreted in light of the apparent legislative intent of the statutory enactments which addressed the constitutional infirmities noted by the Marathon court. See In re U.S. Lines, Inc., 197 F.3d at 642 (Newman, J. concurring); In re Arnold Print Works, Inc., 815 F.2d at 170-71.Congress explicitly set forth certain types of claims which must be heard by the district courts. Other than this explicit withdrawal of the reference for personal injury and wrongful death claims (28 U.S.C. § 157(b)(5)), Congress has left it to the courts to determine how far the powers of the bankruptcy courts may constitutionally reach. Within this circuit, it has been determined that Congress extended the powers of the bankruptcy court to the very limits of the Constitution. See In re Arnold Print Works, Inc., 815 F.2d at 170-71

Included within the class of claims which Congress intended bankruptcy judges to determine are those claims which arise during a bankruptcy which could not have been brought by a debtor before a bankruptcy. See In re Arnold Print Works, Inc., 815 F.2d at 168-69; see also West Electronics, Inc. v. National Union Fire Ins. Co. (In re West Electronics, Inc.), 128 B.R. 900, 903-04 (Bankr. D.N.J. 1991)(holding that a cause of

action which accrues to the estate, and not to the prepetition debtor, is a core proceeding); 222 Liberty Assoc. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assoc.), 110 B.R. 196, 199-200 (Bankr. E.D.Pa. 1990)(determining that a debtor's action to recover a claim which arose postpetition was a core proceeding); Valley Forge Plaza Assoc. v. Firemen's Fund Ins. Cos., 107 B.R. 514, 517 (E.D. Pa. 1989)(stating, "there appears to be no constitutional impediment that would prevent a bankruptcy court from deciding a post-petiton cause of action based on a state law contract claim"). The ability of a bankruptcy court to issue a final order regarding a claim which arises postpetition does not violate the Constitution. In re U.S. Lines, Inc., 197 F.3d at 642 (Newman, J. concurring). Given the First Circuit's instruction that the meaning of core proceedings should be considered to extend the powers of the bankruptcy courts to their constitutional limits, the pending adversary proceeding must be deemed core. See In re Arnold Pront Works, Inc., 815 F.2d at 168. The analysis follows.

In order to state a malpractice claim the Plaintiff must allege: 1) the existence of an attorney-client relationship, 2) that the Defendant acted negligently, and 3) that the Defendant's negligence was the actual and proximate cause of the damages suffered. See Vallinoto v. DiSandro, 688 A.2d 830, 834 (R.I. 1997). The Plaintiff alleges that the necessary attorney-client relationship existed and the negligence occurred prior to the Petition Date. Despite this, the Debtor never owned a cognizable claim for malpractice. The Defendant's failure to properly perfect the Debtor's appeal from Probate Court would not have given rise to any cognizable claim unless and until the appeal was disposed of on account of that negligence. See id. (stating, "An integral part of any attorney-malpractice-negligence claim requires proof that actual damages resulted from

the attorney's alleged breach of duty"). Potentially, the appellee could have overlooked the Defendant's error and the probate appeal could have proceeded. Had that been the case the Defendant's negligence would not have given rise to a viable claim. Therefore, the malpractice claim which arose (at the earliest) upon the dismissal of the probate appeal has belonged to the bankruptcy estate and the Trustee as its legal representative since the moment it accrued.

The Defendant attempts to characterize the Plaintiff's claim as a prepetition claim. See Memorandum in Support of Motion to Withdraw the Reference, p. 5. It is not; it is a postpetition claim. The Defendant accurately points out that malpractice actions which accrue prepetition are not typically core matters. However, each case cited by the Defendant in support of that proposition is distinguishable from the situation presented here. In Official Committee of Unsecured Creditors v. Amlicke (In re VWE Group, Inc.), 359 B.R. 441, 448 (S.D.N.Y. 2007), the court determined that a creditors' committee's malpractice claim against several members of a law firm which represented the debtor prepetition was a non-core matter. 359 B.R. at 448. However, each element of that malpractice claim (duty, breach and damages) had arisen prepetition when the debtor pledged or transferred substantial assets such that the assets were no longer available to satisfy the class represented by the plaintiff committee. See id. at 444. The remaining cases upon which the Defendant relies present similar fact patters and are similarly distinguishable. See Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP, 201 B.R. 635, 639 (S.D.N.Y. 1996)(stating, "all of the alleged acts that form the basis of the Trustee's claims...took place before [the debtor] entered bankruptcy. Thus, both the formation of the contract...and the alleged breach of contract and malpractice occurred in

the period preceding [the debtors'] filing for bankruptcy protection." (citations omitted)); United Orient Bank v. Green (In re Green), 200 B.R. 296, 297-98 (S.D.N.Y. 1996)(describing the claims which arose nearly a decade before the commencement of the underlying bankruptcy).[3]

In In re West Electronics, the debtor brought a breach of contract claim against its insurer to collect under a policy which was issued prior to the commencement of the underlying bankruptcy. 128 B.R. at 902. The insurer sought a determination that the debtor's claim was non-core based upon the fact that the debtor had stated a "garden variety" breach of contract action. Id. at 903. The Court decided that the debtor's claim was a core proceeding due to the fact that the cause of action against the insurer accrued postpetition. Id. at 903-04. As in the instant case, the loss which gave rise to the pending claim occurred postpetiton and, therefore, the claim arose in the course of the underlying bankruptcy. See id.

Here, only after the Superior Court appeal was dismissed (at the earliest), a postpetition occurrence, did a viable cause of action accrue. The damages which resulted from the Defendant's negligence were not suffered by the Debtor as all of his rights to Ruth's estate had vested in his bankruptcy estate as of the Petition Date. See 11 U.S.C. § 541. The damages were suffered by the bankruptcy estate and the Plaintiff as its legal representative months later (April 4, 2005) when its rights relative Ruth's estate were terminated. The redress of these damages is a matter relating to the administration of the estate and is therefore a core matter. See 11 U.S.C. § 157(b); In re Arnold Print Works,

[3] Similarly distinguishable are those cases in which debtors or trustees bring malpractice claims against a debtor's bankruptcy counsel for malpractice which occurred in the course of the bankruptcy representation. These claims are almost universally determined to be core claims. See e.g., Billing v. Ravin Greenberg & Zackin, P.A., 150 B.R. 563, 566-67 (D.N.J. 1993) rev'd on other grounds 22 F.3d 1242.

Inc., 815 F.2d at 166 (stating, "the bankrupt['s]...legal action to collect a 'post-petition' debt...is a 'core' proceeding that the bankruptcy court has constitutional power to decide."); Valley Forge Plaza Assoc., 107 B.R. at 517-18 (holding that a claim arising postpetition is a core proceeding notwithstanding the fact that the contract at issue was a prepetition contract).

*Given that this matter is a core proceeding, it can be most efficiently disposed of by the Bankruptcy Court*

Bankruptcy courts may issue final orders and judgments in core proceedings. 28 U.S.C. § 157(b)(1). The determination of this core proceeding by the Bankruptcy Court will not entail a "two step" process of obtaining recommended findings of fact and conclusions of law in the Bankruptcy Court for de novo consideration by this Court. Given this, the Defendant's arguments concerning efficiency and expediency are mistaken. There will not be any unnecessary expenditure of resources or time in having this proceeding tried before the Bankruptcy Court because the Bankruptcy Court may issue final orders in this matter pursuant to the authority conferred by 28 U.S.C. § 157(b)(1). In fact, the consideration of this case by the Bankruptcy Court will be more efficient in that this adversary proceeding and the underlying bankruptcy will be handled in a single forum. See Marathon, 458 U.S. at 87 n.40, 102 S.Ct. at 2880 n.40 (stating, "one of the express purposes of the [Bankruptcy Reform] Act [of 1978] was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes."). Judge Newman's reasoned concurrence in In re U.S. Lines, Inc. well illustrates the inefficiency which results from motions such as the one presented here:

> Since a cause of action for a post-petition breach *can* constitutionally be considered core, it always should be in order to promote the efficient functioning of the bankruptcy system. That efficiency will be substantially impeded by injecting into numerous bankruptcy proceedings the fact-specific and somewhat nebulous issue of whether a particular post-petition breach of a pre-petition contract has a sufficient impact on core functions to render the cause of action core… A bright-line rule treating all suits for post-petition breaches as core will better serve the interests of all parties involved in bankruptcy proceedings.

197 F.3d at 643 (Neman, J. concurring).

*Uniformity in bankruptcy administration will be best served by the action remaining in the Bankruptcy Court*

The Bankruptcy Court's familiarity with underlying facts of this action places the Bankruptcy Judge "in the best position to monitor all the proceedings related to [the] bankruptcy, including this adversary proceeding." In re Kenai Corp., 136 B.R. at 61. Although this adversary proceeding is in its infancy, the underlying bankruptcy has been pending for close to four years. Though the claims against the Defendant have only recently been brought before the Bankruptcy Court, the Bankruptcy Court is very familiar with the story which the parties must present at trial.

A legal malpractice action such as this requires the trial of two cases. The Plaintiff must prove both that the Defendant acted negligently in prosecuting the Debtor's case and that, but for this negligence, the estate would have prevailed in the underlying probate dispute. See Ciambrone v. Coi & Lepore, Ltd., 819 A.2d 207, 211 (R.I. 2003). While the allegations concerning the Defendant's negligence may be new to the Bankruptcy Court, the underlying dispute between the Debtor and his adoptive brother and sister-in-law over Ruth's estate has been the subject of over a dozen pleadings comprising hundreds of pages and has been the subject of several hearings. The facts

surrounding the probate dispute are no less a part of this adversary proceeding than proof of the Defendant's negligence. The Bankruptcy Court's familiarity with these facts, this Debtor and this bankruptcy will allow for efficient and uniform administration of this adversary proceeding and the underlying bankruptcy. See In re Kenai Corp., 136 B.R. at 61.

*The fact that the Defendant is not entitled to a jury trial indicates that this motion for withdrawal of the reference is simply forum shopping*

Another fact which supports the referral of this matter to the Bankruptcy Court is that the Defendant is not entitled to a jury trial due to his waiver of that right.[4] See Fed.R.Bankr.P. 9015(a); Fed.R.Civ.P. 38(d). A party's entitlement to a jury trial may favor withdrawal of the reference due to a bankruptcy court's relative inexperience in such trials and due to the fact that a bankruptcy cannot conduct a jury trial in core matters without the consent of both parties. See 28 U.S.C. § 157(e). However, this matter will be tried either to the bench of this Court or the Bankruptcy Court. Given that fact this motion appears to be "just another litigation tactic for parties eager to find a way out of bankruptcy court." In re Kenai Corp., 136 B.R. at 61.

## III. Conclusion

This core matter can be efficiently disposed of by the Bankruptcy Court without the need for the submission of recommended findings and conclusions to this Court. The

[4] The Defendant does not mention claims to a jury demands as a factor which courts consider in ruling on motions to withdraw the reference. However, this factor is widely accepted and considered. 1 Collier on Bankruptcy, ¶ 3.04[1][c].

Bankruptcy Court's familiarity with the underlying bankruptcy and the underlying probate dispute compels the conclusion that referral of this matter to the Bankruptcy Court will allow centralized and uniform administration of the case and thereby reduce the monetary burden of litigation on the bankruptcy estate. In light of these facts and the fact that the Defendant has not sought a jury trial there appears to be no "good cause" to withdraw the reference of this case.

STACY B. FERRERA, Trustee/Plaintiff

By her attorneys,

/s/ Steven J. Boyajian
Andrew S. Richardson (#2608)
Steven J. Boyajian (#7263)
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, RI 02906
Tel. (401) 273-9600
Fax. (401) 273-9605
steve@bhrlaw.com